## Williamson *vs.* Carnan.

After an injunction had been granted, prohibiting the defendant from obstructing a public road, *the Commissioners of Baltimore County* authorised the same road to be shut up. The defendant, who was the owner of the land over which the road passed, without moving, or waiting for a dissolution of the injunction, shut it up. The Chancellor excused this violation of the injunction, upon the ground that the defendant had misapprehended his rights; but ordered him to place the road in its former condition; this not being done, the defendant was brought before the Chancellor by attachment. The injunction was then ordered to be continued until final hearing, or further order; and the defendant to remove the obstructions, and for his contempt in not removing them since the previous order, was fined. From these proceedings the defendant appealed. Upon a motion to dismiss the appeal, it was held, that the order of the commissioners directing, and authorising, the old road to be shut up, placed the premises over which it formerly run, under the control of the defendant, and gave him the same right of user of the land of that road, that he had of the rest of his estate; and that the subsequent orders of the Court of Chancery, so affected his rights and interests therein, as to form a fit subject of appeal.

Where the Chancellor entertains a doubt as to the propriety of granting an injunction at all, or where, when granted, it operates in restraint of public commissioners for the opening a road, street, or the like; or it altogether stops, retards, or embarrasses the operation of a large manufacturing establishment, or restrains a public ferry, in these and some other cases of a very peculiar nature, it has been the practice in the first instance, or on application, to appoint a very early day for the hearing of the motion of a dissolution of the injunction, and that too, either with or without answer. Per Bland, Chan'r.

But where upon a defendant's own showing, the injunction operates in restraint of a right, which he has but recently acquired, or has not long decidedly and exclusively enjoyed, and there is nothing peculiar in the case, so as to require a departure from the general rule, it must, as in other cases where individuals only are restrained, take the course of the court.

Ib.

Whether an inferior tribunal with jurisdiction over a given subject, has proceeded to exercise it upon such subject correctly, or erroneously, or has in any respect neglected, or disregarded, its prescribed modes and forms, is not for the Chancellor to determine, where he has no revising or superintending authority over it.  IB.

Chancery will restrain a party from doing an act injurious to an individual, or which may be prejudicial as a public nuisance, pending any judicial proceedings before those tribunals, by which the authority to do the act, or its lawfulness is to be determined.  IB.

APPEALS from sundry orders of the Court of Chancery. The bill of complaint in this case, was filed on the 12th of May, 1826, in *Baltimore* County Court, sitting as a court of equity, by the complainants, (now appellees,) against the defendant, (the appellant,) and afterwards, under the act of 1824, *ch.* 196, at the instance of the defendant, was transmitted to the Court of Chancery. The bill states, that a certain road or highway in *Baltimore* county, usually known by the name of the *Garrison Forest Road*, has been a public road of *Baltimore* county, for upwards of fifty years, and for many years past has been duly and legally recognized as such, on the records of the Levy Court of said county, and has for a long time been used and travelled by the complainants, (residents and landholders in the said county,) and other inhabitants of the said county, as their nearest and most convenient road and way, from their respective farms and places of residence in the said county, to the city of *Baltimore*, the principal and most important market in the said county. That on the 18th of April, 1825, *John M. Wyse*, (one of the complainants,) was duly appointed supervisor of the said public road, by the Levy Court of the said county, as by the warrant exhibited. That the said *Wyse* duly accepted the said appointment, and took upon himself the performance of the duties thereof, and that he hath never resigned his said appointment, nor hath any other person been appointed supervisor of the said road, or any part of it, of which he was so appointed; and as such supervisor, it was, and is his duty to clear, amend, and keep in good repair, the said public road, and not to permit or suffer any fallen trees, or

other obstructions, within his power, to remain in or across the said road, whereby any wagon, &c. may be obstructed for the space of two days together. That the justices of the Levy Court of the said county, without any such application, proceedings or proof being made to and before the said Levy Court, as is and are required by law, and by the acts of Assembly in such case made and provided, and without any lawful authority or good right so to do, on the 10th of April, 1826, made and passed an order of the said Levy Court, to close and shut up a part of the aforesaid public road, to wit, all that part between a point or place near to a stream called the *Western Run,* where a new road has been commenced, and the *Baltimore* and *Reister's Town* Turnpike Road, nearly opposite to *John Armstrong's* gate, in the said county; and although the complainants have applied for and obtained, and caused to be duly served, a writ of *certiorari* directed to the said justices of the Levy Court, commanding them to certify the record of the said order, and of the application and other proceedings on which the said order was made, with all things touching the same, to the judges of *Baltimore* County Court, as a court of common law, for the purpose of having the same heard, adjudged and determined as to law and justice, shall appertain; yet, so it is, that a certain *David Williamson,* junior, (the defendant and appellant,) well knowing that the said order of the Levy Court was irregularly and improperly passed, but pretending and alleging that the land over which the said road passed, belongs to him, although no part of it had ever been in his possession, and without any good right or lawful authority so to do, has proceeded by himself and his agents and servants, to obstruct and shut up the part of the said public road described in the writ of *certiorari* aforesaid, by erecting fences and walls of wood and stone, and placing other obstructions on and across the said road, so as to entirely stop and prevent the complainants from travelling on or using the same, as they were heretofore accustomed, and yet have a right to do; thereby causing great inconvenience and injury to the complainants. That the said *Wyse,* when in pursuance of his duty as supervi-

sor of the said road, was proceeding to remove the said fences and other obstructions, from and out of the said road, and clear the same, as by law directed, the said *Williamson* forcibly and with violence, prevented him from opening and clearing the said road, and wholly refused, and still refuses to permit him to perform his said duty as supervisor, and threatens to use personal violence to and against him, and every other person who shall attempt to open and clear the said road, or to remove any of the fences or other obstructions therefrom, or to travel on or over the said part of the public road so by him obstructed. All which actings, &c. The bill then enumerates certain interrogatories to be answered by the said *Williamson,* and concludes with a prayer for a writ of injunction, to be directed to the said *Williamson,* his counsellors, &c. commanding and enjoining him and every of them, that he and they do absolutely desist from further obstructing and continuing to obstruct and shut up, all that or any part of the public road called the *Garrison Forest Road,* as heretofore used and travelled on, &c. and particularly that part of the said road between, &c. and also that he and they do absolutely desist from preventing by force, &c. *J. M. Wyse,* the supervisor of the said road, or whosoever else shall be appointed supervisor of the said road, his agents, &c. from removing all obstructions whatever, from and out of the said road, and clearing, opening and repairing the same; and from preventing or hindering the complainants or their servants, or any other citizens of this state, from travelling and using the said road as a public highway, in the same manner as it has heretofore been used, until the further order of the court in the premises; prayer also for a *subpœna* to the said *Williamson,* &c.

The writ of *injunction* and *subpœna* were ordered, and issued accordingly, and were duly served by the sheriff of *Baltimore* county.

The *answer* of the defendant, filed on the 13th of May, 1826, states, that he is the owner and occupier of divers tracts or parts of tracts of land, adjacent to each other, situate, lying and being in *Baltimore* county, and binding in part on the eastern side of the *Baltimore* and *Reister's Town* Turnpike Road, between the sixth

and seventh mile stones, and that the road mentioned in bill of complaint of the complainants, did heretofore pass transversely through the lands of the defendant to the said Turnpike Road, above the sixth mile stone, and the defendant conceiving himself greatly aggrieved and injured by the said location of the said road, made known to his neighbours, and amongst others, to several of the complainants, and especially to *John M. Wyse*, that he intended to make application to the Levy Court of *Baltimore* county to alter the location of the said road ; and that on or about the 10th of Ferbuary, 1823, the said *Wyse*, acting for and on behalf of the defendant, wrote and posted up the notice of an intended application to the Levy Court aforesaid. The answer then stated that affidavits were made by certain persons, that copies of the said notice were posted up at certain houses to which public resort was had, near the road in question, which affidavits he exhibited. That on the 21st of February, 1823, the defendant made application, in writing, to the Levy Court aforesaid, that the said road might be altered; and that the application was presented by the said *Wyse* to the said court on behalf of the defendant, he the said *Wyse*, at the same time, urging to the court the propriety of granting the said application to the defendant, who was then absent from the state on business. That at March term, 1823, the said *Carnan*, &c. joint complainants in this cause, and a certain *T. Ritter*, by their petition in writing, addressed to the Levy Court aforesaid, set forth that they were not opposed to the private interest of the defendant in the said projected alteration; but asked the said court to require adequate security on the part of the defendant, to make the new piece of road every way good and substantial. That after the return of the defendant, on the 21st of July, 1823, he procured from the said *Wyse* and one *T. H. Belt*, then living in the neighbourhood, a petition in writing, setting forth that it would be a public benefit to have the said road altered ; and praying that the petition of this defendant might be granted. Which said petition was presented to the said Levy Court. That on the 11th of August, 1823, the Levy Court caused a commission to be issued to *Caleb*

*Merryman, &c.* three respectable free holders of the county, to locate a road as prayed for by this defendant. That the said commissioners met on the premises pursuant of the said commission; that on the 1st of September, 1823, the said *Jehu McAllister, &c.* three of the complainants, and others being then present, made a new location to the said road and caused a plot thereof to be made, and made return of all proceedings to the said Levy Court; and that on the 10th of April, 1826, the Levy Court passed an order that " all that part of the old *Garrison* road leading through the land of *David Williamson,* jun. commencing at the letter B, (marked on the plat returned by the commissioners heretofore appointed by this court to alter and straighten and amend the same) and from thence to the letter C, at the *Reister's Town* Turnpike road, also marked on the said plat, be shut up and closed; the same having been rendered useless by the alteration and amendment made on the said road by the said commissioners, adopted and approved by this court." That the said road so altered as aforesaid, is in every respect a shorter and better road than the old road. That immediately on the passage of the said order last mentioned, by the Levy Court, this defendant, as he conceived he had a right to do, proceeded to connect his fences and enclose his lands, and had the same actually enclosed on the 10th of April last mentioned; and that since that time he has removed a part of the inner fence, whereby the bed of the old road is thrown into a field now in actual cultivation. He admits that on the 18th of April, 1825, the said *Wyse,* was appointed supervisor as hath been stated; but that the said appointments are annual appointments, and that it hath not been renewed; and that under the said order of the 10th of April last past, all that part of the said road as laid down upon the said plat from B to C, which passed through the lands of the defendant, ceased to be a public road, if the same ever was a public road. The defendant charges it to be true that neither the public good, nor their own advantage, but private malice and resentment produced by other causes than the supposed injury from the alteration of the said road, have induced the said *Wyse* and some of his confederates to make this at-

tempt to injure the defendant. That each and every one of the complainants hath other and better roads to mill, to market and to church, than the road heretofore passing through the farm of the defendant. He denies that the said road has been used as a public road for upwards of fifty years, or that there is any record in the Levy Court calling for a public road leading through the lands of this defendant. He admits that an application hath been made for a *certiorari* as hath been stated; but he saith that the road passing through his farm had been closed up and a part of the inner enclosures removed, before any application for the same. That the re-opening of the same, particularly at this time, would be attended with great and irreparable loss and injury to the defendant. He admits that after he had closed the said road as aforesaid, the said *Wyse*, not in pursuance of his duty of supervisor, as is falsely charged in the complainants bill, he the said *Wyse* at the time well knowing of the order of the Levy Court of the 10th of April last, under and from whom he derived his said pretended authority, but for the sole purpose of gratifying his malice and resentment against the defendant, did attempt to pull down and remove the fence of the defendant; and the defendant possessing the power, and feeling himself justified in resisting such lawless invasion of his rights, did prevent the said *Wyse* from passing over and through his farm. That no person except the said *Wyse*, and *M. Turner* (also one of the complainants,) which said *Wyse* is not at this time a freeholder in the said county, have ever attempted or requested permission to pass through the farm of the defendant—another and a better road having been previously provided. He admits he has closed the road referred to from B to C as designated on the plat. He also admits that for some years, but cannot state how many, the said road had been occasionally used by the neighbourhood; and that he claims title to the land over and to the land on both sides of which the said road passes, by purchase, and has been in possession thereof several years. He denies all and all manner of combination, &c. *Prayer* that the said injunction may be dissolved, &c.

Williamson *vs.* Carnan.—1829.

The defendant exhibited the several documents, &c. referred to in his answer.

THE PLAT REFERRED TO.

The proceedings having been transmitted to the Court of Chancery as before mentioned, the defendant on the 15th of May, 1826, by his petition to the Chancellor, stated, that the continuance of the injunction heretofore issued will be attended with great and irreparable damage, loss and injury to the petitioner. He therefore prays, that the Chancellor will pass an order limiting an early day for the hearing of the motion, (which he had entered on the docket,) to dissolve the injunction.

BLAND, Chancellor, 15th May, 1826. In cases where the Chancellor entertains a doubt as to the propriety of granting an injunction at all, or where, when granted, it operates in restraint of public commissioners for the opening a road, street, or the like; or it altogether stops, or retards, or embarrasses the operation of a large manufacturing establishment, or restrains a public ferry, in these and some other cases of a very peculiar nature, it has been the practice in the first instance, or on application, to appoint a very early day for hearing of the motion for a dissolution of the injunction, and that too, either with or without answer. But according to the defendant's own showing, in this case, this injunction operates in restraint of a

right which he has but recently acquired, or has not long decidedly and exclusively enjoyed. There being, then, nothing in this case of so peculiar a nature as to require a departure from the general rule, it must, therefore, as in other cases where individuals only are restrained, take the course of the court; and the foregoing petition is hereby dismissed with costs.

Afterwards, on the 25th of May, 1826, the Chancellor, on motion of the defendant, passed an order, that the motion to dissolve the injunction, stand for hearing at the next term, provided a copy of the order be served on the complainants, or their solicitor before, &c. The copy was duly served.

BLAND, Chancellor, (September term, 1826.) This case standing ready for hearing, the motion to dissolve the injunction, and the solicitors for each of the parties having been heard, the proceedings were read and considered.

There can be no doubt, from the act of 1821, *ch. 152,* that the Levy Court of *Baltimore* county have the jurisdiction and power of "opening a new road, or of vacating or altering an old road." Whether that tribunal has, in this instance, proceeded to exercise its jurisdiction upon this subject correctly or erroneously; or has, in any respect, neglected or disregarded the prescribed modes and forms, is not for the Chancellor to determine; because he has no revising or superintending authority over it.

The object of the injunction was not to touch or impeach the jurisdiction of the Levy Court; but to stop the further proceedings of the party, upon the ground, that there were some circumstances in the case which showed, that he ought not to be permitted to do the act complained of, until it had been finally directed or sanctioned by that jurisdiction, or superior and controlling authority.

It appears, that the Levy Court, on the 10th of April, 1826, passed an order directing the road in question to be closed; and also, that on the 14th of the same month, the complainants obtained a writ of *certiorari* to remove the proceedings of the Levy Court into the County Court for their revision. It does not distinctly appear, that the order of the Levy Court was of

such a nature, that its execution could not be suspended by a writ of *certiorari*, until the matter thereof could be heard and decided upon by the County Court. It is no where in the bill or answer, spoken of or stated to be an order of that character. And whether the County Court have the power to suspend, revise or reverse such an order, is not for this court to determine. That the writ of *certiorari* did issue, has been admitted; and for aught that appears, is still depending. It appears that the defendant did obstruct the old road, while the question for vacating it, was still *sub judice;* after the Levy Court had passed their order, but before it had been affirmed or decided upon by the County Court, to which it had been carried by the writ of *certiorari;* and, therefore, he was properly restrained by the injunction. For although this court has no power to revise the proceedings or to correct the errors of the Levy Court, or the County Court; yet, it will restrain a party from doing an act injurious to an individual, or which may be prejudicial as a public nuisance, pending any judicial proceedings before those tribunals, by which the authority to do the act, or its lawfulness is to be determined. If the County Court shall determine upon the return to the writ of *certiorari*, that the order of the Levy Court of the 10th of April, was final and conclusive; or that it be affirmed; or that the writ of *certiorari* be quashed, then the defendant will stand justified under that order, in going on to obstruct and close the old road, in question, so far as it passes over his land; and this injunction must be dissolved. If on the contrary, the County Court shall reverse or annul the order of the Levy Court, the restraint upon the defendant must be continued. It is proper that the parties should be held in their present situation to await that decision.—*Ordered*, that the injunction be continued until the hearing, or further order.

At December term, 1827, the Defendant, by his petition to the Chancellor, prayed leave to amend his answer, &c. But the Chancellor refused the leave, and dismissed the petition. At the same term, the complainants, by their petition, stated that it would appear by the annexed affidavits, that the defendant had totally disregarded the injunction, and caused the road

therein mentioned, to be obstructed, &c.   Prayer for an attachment against the defendant, and that he may be compelled to place the same road in the same situation as it was previously to his closing the same .on the 13th of the present month.

An attachment was accordingly ordered and issued returnable forthwith; and the sheriff returned the said writ, that he had attached the defendant.

At March term, 1828, the complainants again by their petition stated, that the defendant, disregarding the said injunctions, did by his agents, servants and himself, caused the road mentioned in the injunction, to be obstructed on or about the 13th of December last, by causing fences, &c. to be erected, and placing other obstructions on and across the same, &c. as will appear by the affidavits filed on the last term.   That although an attachment issued, and was duly served on the defendant, it had not had the effect of causing him to remove the obstructions then existing; but as would appear by the annexed affidavit, he had additionally obstructed the said road, &c.   Prayer for an attachment against the defendant, and that he be compelled to place the said road in the same situation as it was previously to his closing the same on or about the 13th of December last.

An attachment was again ordered and issued, returnable forthwith; and was duly served, &c.   The defendant appeared and filed his petition, in which he stated, that the proceedings of the Levy Court in reference to the said road, having been set aside by *Baltimore* County Court, upon the hearing and examination thereof, under the writ of *certiorari*, which had been issued, &c. as will appear by a transcript of the proceedings exhibited; not upon the merits of the case, but for defect of form, as will appear by a copy of the opinion of the said court. That the petitioner being advised that, that part of the said road called the *Garrison Forest Road*, mentioned in the proceedings, having become a public road and highway, he, together with other petitioners, taxable inhabitants of the county, made a new application to the Levy Court, to alter and close the said part of the said road; and that the complainants had notice thereof, and attended a meeting of the commissioners

appointed under the said application, and opposed the confirmation of the return made by the said commissioners. That on the 13th of December, 1827, an order was passed by the commissioners of the county *to whom the powers and duties heretofore exercised by the Levy Court, have been transferred,* that all that part of the before mentioned road be shut up and closed; and that the petitioner, or any other person or persons, through whose lands the said old road may have been departed from, by such altering, &c. are authorized to shut up and close the same, as by reference to a copy of the said proceedings exhibited will appear. That the complainants had knowledge of the said order of the said commissioners, and that the said order being final and conclusive without appeal, and no writ of *certiorari* having been applied for, and the said road so authorized to be closed, passing transversely through the farm of the petitioner; and the complainants, by the altering of the said road, having another and a better and shorter road, and the petitioner being greatly aggrieved by the passing of the said road through his lands, and conceiving himself fully authorised to do so by the said order, he, by virtue of the said order, and not as he avers, in contempt of the court, did proceed to close the said road; and that he shut up and closed the same without force, &c. and before any attachment had issued against him. That since he has closed the said road, he hath removed his inner fences, and planted an orchard on either side of and through the bed of the said road; and that the removal of his fences will be attended with great and irreparable damage to him. Prayer that the said road may be suffered to remain closed; and that he may be released from custody, and that the attachment may be quashed.

Among the several exhibits filed with the preceding petition, was the following, being the opinion of *Baltimore* County Court, in May, 1827, on deciding on the *certiorari* which had been issued.

ARCHER, Ch. J. This court assumes to itself no power or authority to review the judgment of the Levy Court, as to the fact, whether the public convenience required the alteration in

the road mentioned in the proceedings in this case. *The Levy Court* is the sole and proper tribunal, to which the laws have confided the adjudication of that matter, and doubtlessly, they have upon this point made a correct determination. But whether they have. been right or wrong, is not my province to determine. I cannot sit as an appellate court, to review their judgment. The laws in this respect have assigned to me other duties, to the performance of which I proceed. I have carefully examined all the authorities referred to, together with the acts of the General Assembly, conferring powers on the Levy Court, and the constitution and laws giving powers to this court, and will briefly present the conclusions to which I have arrived. It would have been satisfactory to the parties concerned, as well as gratifying to myself, to have presented particularly the reasons by which I have been led to these conclusions; but the pressure of business at the close of the term, gives me scarcely more leisure than is indispensably necessary to examine and adjudge the matter submitted to me. And in this case, I should not have reduced any thing to writing, but from a belief. that some of the conclusions to which I have arrived, might, upon future occasions, be useful to the subordinate tribunals, as a guide in similar matters, which might come before them; and at the same time, inform them and others interested, of the powers and obligations of this court, in relation to inferior judicial jurisdictions and their proceedings. In this case the following principles are adjudged and settled by this court.

1. That every inferior jurisdiction, whether created by a public or a private law, is subject to have its proceedings inspected either by appeal or by *certiorari* and *mandamus*, where such jurisdiction acts judicially. 1 *Salk.* 146. 1 *Ld. Raym.* 580. They will be coerced to perform their duties, and restrained and confined within their proper limits as prescribed by law.

2. That where these jurisdictions act in a summary manner, or in a new course different from the common law, a *certiorari* is the peculiar and appropriate remedy; as in such a case, a

writ of error will not lie. *Greenvelt vs. Burwell*, 1 *Salk.* 263. *Com. Rep.* 76. *Israel vs. Allen*, decided in *Baltimore* County Court.

3. That a *certiorari* does not go to try *the merits* of the *question*, but to see whether the limited jurisdictions have *exceeded* their bounds. 2 *Burr.* 1042.

4. That a *certiorari* will lie after judgment, where the jurisdiction proceeds in a summary manner, and in a course different from the common law. 1 *Salk.* 263. *Com. Dig.* 76. 2 *Burr.* 1042.

5. That a *certiorari* may issue even after judgment executed, where a limited authority has been transcended by inferior jurisdictions, in cases where no writ of error lies, for the purpose of quashing their proceedings.

6. That in this case, *the Levy Court of Baltimore County*, in their power to open and alter roads, is a tribunal of limited jurisdiction, proceeding in a summary method, and in a course unknown to the common law; and that in their confirmation of the return of the commissioners, under the act of 1821, *ch.* 152, in relation to roads, they act judicially and not ministerially.

7. That without the notice required by the act of 1794, *ch.* 52, they have no power to open, amend, alter, change, widen or straighten a road.

8. That until a *number* of inhabitants petition for a road under the act of 1821, *ch.* 152, they have no power to appoint a commissioner, or to pronounce a judgment on any return of commissioners.

9. That a number of inhabitants within the meaning of the law, did not petition the Levy Court in this case, till July, 1823.

10. That the notice required by law, should have corresponded with the time when a legal petition was first preferred to the Levy Court.

11. That the notice being to March term, and no petition within the meaning of the law until July, the notice was not such as is required by law.

12. That this court cannot presume a notice in conformity with law, when the papers and record returned show an illegal and insufficient one.

13. That there being no notice within the meaning of the law conferring power on the Levy Court, the whole proceedings are *coram non judice* and void.

14. That the judgments and orders of the Levy Court of the 7th of October, 1823, and of the 10th of April, 1826, ought to be, and are accordingly quashed.

The defendant by his petition to the Chancellor, prayed that the injunction might be dissolved. The Chancellor directed that the motion for dissolving the injunction stand for hearing on the 13th of May following; provided a copy of his order, &c. be served on the complainants on or before, &c.

The complainants then moved the court to pass an order committing the defendant to the gaol of *Anne Arundel* county, for a contempt by him committed, in not obeying the injunction.

BLAND, Chancellor, (23d of April, 1828.) In this case, *David Williamson* having been brought into court on the said attachment, and having made answer on oath to the alleged violation of the injunction; and the solicitors of the parties having been heard; and it appearing, that the acts done in violation of the injunction were done under erroneous advice, and an apprehension that he had, by other judicial proceedings of another court, been authorised to do the same—*Ordered*, that the said *Williamson* do now, forthwith, and with the least possible delay, entirely remove and take away all fences, stones, timber, trees, and all manner of hindrances and obstructions, which he, his agents or servants may have placed or put in or upon the said road, in the proceedings mentioned; and which he, his agent or servants were prohibited from placing or putting in or upon the said road by the said injunction. *Further ordered*, that the said *Williamson* pay all the costs of the proceedings in relation to this process of attachment; and that he stand committed until the said costs are paid.

The defendant, after paying the said costs, appealed from the above order to this court, and entered into bond with security (which was approved) for prosecuting the appeal.

The complainants, on the 5th of May, 1828, by their petition, stated, that since the order of the Chancellor of the 23d of

April, 1828, the defendant had not removed the obstructions from the said road, and had declared and avowed that he would not obey the said order, and that he would not remove, or permit to be removed the said obstructions, &c. Prayer for an attachment against the defendant, to answer for the contempt so by him committed and wilfully persisted in, contrary to this court, and for the continuance of the breach of the said injunction. And also, that by a special order of the sheriff of *Baltimore* county, may be authorized and directed to cause all the said obstructions, &c. to be removed, and the said road to be opened and cleared at the expense of the defendant, &c.

An attachment was ordered and issued accordingly, returnable forthwith; and was, on the 13th of May, 1828, returned by the sheriff, that he had attached the defendant, and had him ready in court to answer, &c. The complainants then moved the court that the defendant be committed to the gaol of *Anne Arundel* county, &c. And at the same time, the complainants, by their suggestion in writing, stated that the defendant, before the filing of his petition, and notice of motion to dissolve the injunction, had committed a breach of the injunction, and at the time of filing his said petition, was actually in custody under attachment for his contempt in committing such breach; and so continued in custody until the order of the 23d of April was passed, which order he has not obeyed; but has wilfully, and in open contempt of this court continued, and still continues his breach of the said injunction. They therefore pray that no motion on behalf of the defendant, to dissolve the said injunction, may be heard, entertained or considered, while he is thus acting in open and wilful contempt of this court, its orders and process. That proceedings in regard to the opening and keeping open the said road as a public highway, are now depending before the commissioners of *Baltimore* county, the lawful and proper tribunal to decide on the shutting up or continuing open the said road in the first instance; subject nevertheless, to have their proceedings in relation thereto, reviewed and reversed, or confirmed by the County Court. Prayer that the motion to dissolve the injunction, may be overruled, &c.

The defendant, on the 14th of May, 1828, in his answer to the petition of the complainants of the 5th of May, 1828, denies the charge in the petition that he will not permit to be removed the said obstructions, &c. so by him caused to be placed in and upon the said road. That the injunction did not require any act to be done by him. He is not conscious of having violated the injunction until December, 1827. He refers to the order of the 2d of December, 1826, showing the ground on which the court originally interfered, and refused then to dissolve the injunction. By that order he was apprized that if "the County Court shall reverse or annul the order of the Levy Court, the restraint upon the defendant must be continued." He admits after the decision of the County Court, he did not expect a dissolution of the injunction. It was the fault of the complainants that it was not made perpetual. The answer then sets out the proceedings of the Commissioners of the County, under the defendants new application, &c. and avers that the order of the Commissioners justified his acts of December, 1827, and would not have been any contempt of this court, even if the injunction had been made perpetual. The only effect of a perpetual injunction, would have been to prevent the defendant from claiming any right to obstruct the road in virtue of the order of the Levy Court, which had been rescinded, and could not deprive him of the right of filing a second petition, &c. He, therefore, in the month of December, 1827, did cause fences to be erected across the said road, as stated in the complainants several petitions of the 4th of January and 9th of April last, and in which petitions the complainants for the first time prayed the court, among other things, to compel the defendant to place the said road in the same situation that it was previous to his closing the same, "on or about the 13th of December last." That the acts done on or about the 13th of December last, are the only breaches of the injunction of which the complainants at the time of filing their petition had complained. On the answer of the defendant to the said petition, the Chancellor proceeded to pass his decree upon the whole matter thereof. He refers to the decree of the 23d of April, 1828, and insists that even if the erection

of such fences and obstructions as these charged in the several petitions of the 4th of January and 9th of April, could be considered a contempt of the court, he is not now to answer for it, as he has already been before the court to answer the said charges, and the same have been adjudicated. The said petitions prayed that the defendant should be compelled to place the said road in the same situation it was on or about the 13th of December last, and did not require, nay, may be construed to forbid him, to remove any obstructions, &c. of an earlier date—none others had he ever been required to remove. Those which had been placed there before the granting of the injunction, the court upon the *ex parte* application of the complainants, could not command him to remove. The language of the injunction was to *desist*, and did not and could not command him to *do*. That the first order of this court, whether in the form of an injunction or of a decree in the premises, commanding the defendant to remove or take away any fence, stones, &c. is to be found in the decree of the 23d of April, 1828. This decree the defendant admits has not been executed by him. He has prayed an appeal from it; has given bond with approved security, and insists that the same operates a stay of all further proceedings until the same is affirmed, or the defendant fails to prosecute it. That the execution of the decree at this time would deprive him of every benefit, that by a reversal of it, should it be reversed, he would gain, &c. Prayer to be dismissed.

BLAND, Chancellor, (20th of May, 1828.) The defendant having been brought before the court in custody, by an attachment upon a charge of contempt, in having committed a breach of the injunction heretofore granted in this case; and the motion for a dissolution of the injunction standing ready for hearing, the solicitors of the parties were heard in relation to both of those matters, and the proceedings read and considered.

A brief review of this case seems to be necessary to a correct understanding of the matters now to be decided upon. [The Chancellor's opinion then stated the facts, proceedings, and views of the case, as before set out, and said,] it was to this state of the pleadings and to arguments of this nature,

I addressed myself in the order of the 2d of December, 1826, by which the injunction was continued until the hearing on further order. The defendant, it will be seen by his answer and his motion thereon for a dissolution, did not, as it would seem, then consider an order of the Levy Court for shutting up the road, (even admitting it to have been in all respects a final, conclusive and irreversible judgment,) as having of itself the effect of annulling the injunction, or as virtually dissolving it, without any motion or application to this court for that purpose. No such notion had been in any manner intimated or suggested, either in the pleadings or arguments as they were then presented to this court; and it never once occured to me, at the time of uniting that order, that any such notion ever had been, or would be advanced or attempted to be sustained. Indeed so far from it, the contrary is clearly deducible from the course pursued by the defendant himself. For, although he did contend, that the order of the Levy Court for closing the road was conclusive; yet, he deemed it necessary, and then came here to ask a dissolution of the injunction as soon as practicable; because, until it was dissolved *by this court*, he could not take the benefit of that legal authority which he had thus obtained from a competent tribunal; and as he distinctly alleged, the continuance of it would be attended with great and irreparable damage and loss to him. Thus expressly admitting, that so long as the injunction remained in full force, and unrevoked *by this court itself*, he would not be justified in disobeying it by any authority which he could obtain from any other tribunal.

The granting of the injunction was predicated upon the fact, that the specified lands of the defendant were charged with a public servitude as a highway; the defendant bottomed his prayer to be relieved from the restraint, upon the allegation, that it had been finally discharged from that servitude; he failed to sustain his allegation; and the injunction was continued.

The principle, that an injunction once granted, continues in full force until dissolved by the court by which it has been awarded, is so entirely obvious, and so necessary to preserve

harmony among the several branches of the government; and to prevent any one tribunal from being brought into collision with the legislature, or any other court of justice which may have the power to exercise authority upon the subject to which the injunction relates, that I had supposed it never had been, or would be questioned by any one. And my order of the 2d of December, 1826, was written under this strong impression. The parties, by the proceedings as they then stood, looked to the final determination upon the proceedings of the Levy Court by the County Court, as that decision by which the right to the highway in question, was to be put at rest; and, therefore, I said, that they must be held in their then situation, to await that decision. But I neither intimated nor supposed, that the parties were, or could be restrained from pursuing any legal course whatever, for the purpose of having the right to this public road finally determined. I was aware, that if it should be in any way legally closed, either by the legislative or judicial authority, this defendant would be entitled to be relieved from the restraint which had been imposed upon him. But, I did not for a moment suppose, that this defendant, after the obligation he had admitted himself to be under to obey the injunction, notwithstanding the legal authority he had, as he said, obtained, would at any time afterwards, attempt to disobey it, because of any other legal authority which he might believe he had obtained in any other manner than that to which he then especially referred. And, it is clear from what I then said, that I expected to hear again from the defendant as soon as he had, in any manner whatever, succeeded in obtaining a final and complete legal authority for closing the road, which the injunction had thus restrained him from obstructing. In short, the whole course of proceedings, antecedently to this period, so far from warranting the inference that the injunction could be virtually dissolved by any other judicial proceedings, shows, that it was, notwithstanding any such proceedings, to be considered as in full force until dissolved by this court itself.

On the 3d of January last, the defendant filed a petition, in which he states, that the proceedings of the Levy Court referred

to in the bill, had been taken by *certiorari* to the County Court, and by that court set aside; that he had made another application, and had obtained an order for closing this road; which order, he says, being final and conclusive without appeal; and he being greatly aggrieved by the passing of the old road over his lands, and conceiving himself fully authorised so to do, by that order, did in virtue thereof, proceed to close it from A to B, as designated on the plot, [returned under the last order for closing the road,] and that he shut it up, without force, and without opposition from any one. And then concludes by asking leave to file an amended answer, setting forth the several matters therein stated, and that the bill be dismissed upon such terms as may seem just. This petition not being sworn to, and, even if it had been sustained by an affidavit, laying no proper ground for leave to amend the answer, was, by an order passed on the next day, dismissed with costs. ·

On the same 3d of January last, the plaintiffs also filed a petition with sundry affidavits, showing that the road had been obstructed and closed by the defendant, in disobedience of the injunction, and praying for an attachment, which was ordered, issued, served, and returned executed. But the plaintiffs, as it seems, suffered it to pass off without asking to have any thing done upon it. On the 9th of April last, the plaintiffs again asked an attachment against the defendant for disobeying the injunction, which was awarded; and on the 22d of April last, he was brought before the court, in custody, when he filed his petition on oath, with a reference to the bill of injunction, answer, order and attachment for contempt. In this petition he sets forth, that the proceedings of the Levy Court, which were removed by *certiorari* to the *Baltimore* County Court, having been there considered and quashed, he had afterwards made a new application to the Levy Court, and had obtained an order to shut up the road in question; which order was final and conclusive, without appeal—no writ of *certiorari* having been applied for. That conceiving himself fully authorised to close the old road, so far as it passed over his land, and not in contempt of this court, he did shut it up accordingly. Whereupon, he prays that the

road may be suffered to remain closed, that he may be released from custody; and that the attachment may be quashed.

It appears then, by the defendant's petitions of the 3d of January and 22d of April, that he had conceived himself fully and legally authorised to close this highway by virtue of the order of the Levy Court, notwithstanding the injunction of this court, which had positively prohibited him from closing or obstructing it in any way whatever; or, in other words, that the final order he had obtained, had virtually, yet effectually and completely dissolved and annulled the injunction heretofore granted by this court. The defendant made no application or motion to have the injunction dissolved after the 2d of December, 1826, until the 22d of April last. He has not even deigned to speak of the injunction, in the body of either of those petitions, in which he acknowledges and attempts to justify the closing of the road; and yet, in the first, he asks to be permitted to file an amended answer, and to have the bill dismissed; and in the second, he prays that the road may remain closed; and that he may be discharged from the attachment. If the prayer of his first petition had been literally and fully granted, and the bill dismissed; yet, that would not have dissolved the injunction, unless it had been so expressly ordered. By the second petition, this court is, in effect, gravely asked to make a most extraordinary transit over all its own proceedings, into those of the Levy Court; to approve, and act upon them, and totally disregard its own. For, an order of this court, as prayed, that the road should be suffered to remain closed, and that the defendant should be discharged from the attachment, most manifestly, could stand upon no other foundation than a complete affirmance of the proceedings of the Levy Court, and an entire disregard of all the previous proceedings of this court. I never before heard of such an indirect mode of obtaining a virtual dissolution of an injunction, by bringing to bear upon it a judicial decision of another, and totally different tribunal, not exercising, or having any appellate jurisdiction over the court, whence the injunction issued. An injunction, emanating from a competent authority, is a command of the law; and the citizen

is, as I have always understood, bound to yield implicit obedience, until the restriction has been removed by the authority which imposed it. But, if the position assumed by this defendant be correct, then, instead of obeying, or moving to dissolve an injunction, a party may avail himself of various modes of getting around, or under, or over it, without being chargeable with the slightest contempt of the law. The judgment of this court, continuing the injunction, was founded upon the proof or admission of certain facts, after hearing both parties, as to the very point, whether it ought to be continued or not. But, if it could be indirectly and virtually dissolved by a judgment of the Levy Court, upon a different case, then it might be evaded by one party, without hearing the opposite party as to the former, or any new facts, or equity which he might be able to show, as a most solid ground for its further continuance. The court, *commanding obedience to an injunction, might thus be brought* into collision with another court, alleged to have sanctioned, or, as this defendant has said, *ratified* the acts in disobedience of it; in which conflict of jurisdiction, the rights of persons and of property, it is evident must suffer; while he who produced the scuffle, might escape with the spoil. Surely, such principles, which, to say the least of them, lead so directly to disorder and confusion, ought not to be tolerated for a moment. It was upon these considerations, that I passed the order of the 23d of April last, from which the defendant has appealed, and given bond for the prosecution of his appeal. After I had in open court, addressing myself to the argument that had been urged in support of the defendant's petition of the 22d of April last, declared, that the order of the Levy Court could not be allowed to operate as a virtual dissolution of the injunction ; that it could only be dissolved by this court itself, on motion, after hearing the parties; and that until so dissolved it must be considered as in full force, and would be enforced by attachment; the defendant, on the same 22d of April, filed his petition praying for a dissolution of it, upon which the court, on that day, passed the order appointing the 13th inst. for the hearing of the motion to dissolve, on notice being given as directed. On the

5th of the present month, the plaintiffs filed their petition, with an affidavit, in which it is stated, that the defendant had violated the injunction by causing obstructions to be erected across the road, which he had not removed as he ought to have done, in obedience to the order of the 23d of April last; whereupon they prayed that an attachment might be issued against the defendant, "to answer for the contempt so by him committed and wilfully persisted in, contrary to the order of this court; and for the continuance of the breach of the said injunction." And they further prayed, that the sheriff of *Baltimore* County might, by a special order, be directed to remove the obstructions complained of. The attachment was ordered as prayed; upon which the defendant was brought before the court in custody, on the 13th instant, the day appointed for hearing the motion to dissolve the injunction; and he then moved to quash the attachment; because an appeal had been prayed and bond given which had suspended the further proceedings of this court. On the next day, the 14th instant, the defendant filed an answer on oath to the alleged contempt; in which he claims a discharge upon two grounds—*First*, that the injunction only operated as a restraint from closing the road, under and by virtue of the authority of the Levy Court, referred to in the bill; but did not prohibit him from shutting it up under any other authority than the one mentioned; and *secondly*, that the whole subject matter having been heretofore brought before the court, and having been embraced and adjudicated upon by the order of the 23d of April last, has been suspended by the appeal from that order; and cannot, therefore, be now in any manner treated as a contempt of this court.

The bill upon which the injunction was granted, as is usual in such bills, recites the colourable or pretended legal authority under which the defendant had obstructed the specified highway, contrary to law; and avers, that the pretended legal authority of the Levy Court, under which the defendant had assumed the right to act, was erroneous, and that its validity was a question depending, and then to be decided upon by a superior tribunal; and hence, the defendant having then no

authority whatever to close the road, it thereupon prays, in general terms, that he may be altogether enjoined from doing so. There is absolutely nothing in the prayer of the bill, nor in the writ of injunction itself, which limits the prohibition to a shutting up under the order of the Levy Court, or under any other particular and specified authority whatever. Neither the terms of the prayer, nor of the writ make any allusion whatever to any judicial proceedings of any kind then depending, or thereafter to be instituted. The restriction imposed upon the defendant is as general and comprehensive as it could well be expressed. The clear and unequivocal sense of which is, that the road shall continue to be considered as a public road or highway, which the defendant shall not be permitted to close until he shall produce and show to this court, that he had obtained a legal authority to do so. Therefore, the only question now is, whether the acts done by this defendant are such as he was prohibited from doing by the injunction? Those acts are the erection of obstructions upon this highway; now those are the very acts which this injunction does most positively and distinctly prohibit. It is true, that if the injunction had prohibited acts of one description from being done, and the party restrained had done acts of another description, he could not, as the defendant has alleged, be charged with a contempt. The injunction did not prohibit him or any other person from instituting any proceedings, or making any application for the purpose of obtaining a legal authority to close this road; and consequently such acts of the defendant cannot be regarded as a breach of the injunction. So, too, if any other person had obtained an authority to close this road, such person might have proceeded, at once, to shut it up; but, most unquestionably, this defendant cannot be allowed to do so, upon his obtaining an authority to close it, until he has first shown that authority to this court; and upon motion and notice to the opposite party, according to the established practice, obtained a dissolution of that general and unqualified restraint which has been imposed upon him by the injunction. This first cause shown by the defendant, for his discharge, being based upon an assumed posi-

tion not warranted by the proceedings, is therefore deemed insufficient. Indeed, the showing itself seems tacitly to admit the correctness of the charge of contempt, but for that qualification of the injunction which it has assumed, and which has in fact, no real existence.

The *second* ground upon which the defendant rests his claim to be discharged, is, that this whole subject has been taken from this court to the Court of Appeals. I feel no disposition to meddle in any way whatever, with appeals from this court; and certainly shall not, knowingly or intentionally, check, control, or retard them in any manner or form, either directly or indirectly. And, therefore, until otherwise directed by the Court of Appeals, I admit, that the appeal has entirely suspended the power of this court to execute the order of the 23d of April last; and consequently, that the defendant cannot now be charged here with any contempt for a disobedience of that order. With regard to the prayer of the plaintiffs' petition of the 5th of May, instant, that the sheriff may be ordered to remove the obstructions that have been placed in this road, I deem it unnecessary, upon this occasion, to express any opinion whatever. But the injunction has not yet been dissolved, and there has been no appeal or other proceeding by which the enforcing of that command has been waived or suspended. The petition of the plaintiffs of the 5th instant, and the attachment awarded thereon, charges the defendant with contempt by acts "committed and wilfully persisted in contrary to the order." And also by "the continuance of the breach of said injunction;" or, in other words, "in disobeying the injunction and order heretofore issued in this cause." The language of the writ of attachment is, as usual, general; but so far as it is calculated to embrace a charge of disobeying the order appealed from, it is considered as improper. The defendant, as to so much, must be discharged, and that writ, so far, is hereby quashed.

The question, therefore, is reduced to this, whether or not the appeal from the order of the 23d of April last, has suspended the authority of this court to enforce obedience to the injunction? The order of the 23d of April, is an adjudication upon

the subject matter then submitted to the court for its decision, and nothing more. The defendant had been brought before the court upon a charge of contempt, for having violated its injunction; and upon that charge it pronounced that judgment. The court had the power to have committed the defendant to prison, and to have imposed a fine upon him; but, considering the erroneous advice and misapprehension under which he had acted, it imposed the lightest punishment it could select in application to the circumstances and nature of the case—which was, that the defendant should immediately himself be at the expense and trouble of removing the obstructions, and should pay the costs of the attachment. But suppose this order had been literally obeyed, and the defendant had afterwards erected other obstructions on this road, during the continuance of the injunction, the court, on application, would certainly have had him brought before it, and punished for this new contempt; or if the defendant had neither obeyed, nor appealed from the order, then, on application, he might have been attached and punished, as well for his failure to *remove* the obstructions *as ordered*, as for the *continuance* of them in disobedience of the *injunction*. Every continuance of a nuisance, or trespass, is a new and additional subject of complaint, and each continuance may at law be made the subject of a separate prosecution or suit. The not removing the obstructions, and the continuance of them are clearly two distinct subjects. The first is embraced by the order which has been suspended by the appeal. But the second can only be considered as a violation of the injunction, which has been in no way dissolved or suspended; because, it was that alone, and not the order, which prohibited the continuance of the obstruction. Every continuance of the obstructions is a new and distinct ground for an attachment. All contempt for the continuance of these obstructions, antecedent to the order of the 23d of April, and also during such reasonable time thereafter, within which the defendant might have complied with it, are embraced under, and to be atoned for by him, upon the terms of that order. But the specified continuances of them since, are totally distinct subjects of complaint; are new

violations of that injunction, which is admitted to be in full force; and are now to be treated and considered as if nothing had occurred in disobedience of it, prior to that time. I am, therefore, of opinion, that this second cause upon which the defendant rests his claim to be discharged, so far as relates to the continuance of the obstructions, after they might have been removed as above mentioned, is as entirely unfounded as the first.

The plaintiffs have, by their petition, suggested, and also urged in argument, that the defendant, while in contempt, is not in a situation to move for a dissolution of the injunction; that his petition, asking to have a day appointed to hear a motion for a dissolution, having been filed before he had cleared himself of the contempt wherewith he then stood charged, was irregular, and that the motion cannot now be heard, until he has cleared himself of the present charges.

It is certainly true, as a general rule, that a party will not be permitted to come in and claim the benefit of that judicial authority, which he has contemned and set at naught. He must recognize its power by obedience, and clear away all imputations of contempt, before he can be allowed to ask from it any relief. But the circumstances of this case are evidently very peculiar. The nature and extent of the punishment to be imposed upon the defendant, for the breach of the injunction, with which he now stands charged, ought, and must depend, in some degree, upon the determination, whether the injunction is to be continued or not. If it is dissolved, a mere corrective fine, proportioned to the disobedience complained of, will be sufficient. If it is continued, then he should, at the least, as before, be ordered to remove the obstructions; to pay all the costs; and also to pay a fine, or stand committed, or both; which may be hereafter so increased as to insure obedience. It therefore occurred to me, to suggest to the solicitors, the propriety of now hearing the motion to dissolve the injunction, in order that I might, upon the attachment, adopt the most suitable mode of enforcing obedience to the injunction, should I come to the conclusion that it is to be continued. The motion

for a dissolution, was accordingly taken up and argued; and I shall now proceed to consider and decide upon it.

On adverting to the proceedings which have been in this case, antecedent to the 13th instant, it will be seen, that the defendant admits he closed the road subsequently to the service of the injunction upon him; and that he also admits he has not hitherto obtained from this court a dissolution of that injunction. These positions are unquestioned and unquestionable. From these premises, I conceive it to be the duty of this court, to assume and act upon the position, that this road is now open, and has not been as yet closed, so far as regards this defendant. For if the defendant were admitted, in any way, to avail himself of that shutting of it up, which has been in fact done by himself, then he would be thus suffered to take advantage of his own wrong, which can never be allowed. And from a review of this case, I also consider it proper, as regards the defendant, to assume and act upon the position, that he cannot claim a dissolution of this injunction, unless, at the time of asking it, he shows, that the closing of the road, so far as it passes over his land, has been legally and finally authorized by some competent authority; and that the question, whether it should be closed or not, is not, at the time of hearing the motion for a dissolution, depending before any legal and competent tribunal.

The plaintiffs, by their petition filed the 13th instant, set forth and show several causes why the injunction should not now be dissolved as prayed; and, among others, they show, that proceedings have been instituted, and are now depending before the Commissioners of *Baltimore* county, a legal and competent authority, for having this same highway, called the *Garrison Forest Road,* opened, and kept open, as it has heretofore been. As I have observed upon a former occasion, in regard to the Levy Court, whether the proceedings which have been thus instituted before the commissioners, are as correct and regular as they ought to be, is not for this court to determine. It is enough, that it satisfactorily appears, now, upon the hearing of this motion, that the defendant has not yet obtained a final and conclusive legal authority to close this road; and, that he

has, as yet, no right to shut it up; because the right to do so, is, at this time, depending before, and to be determined by a legal and competent tribunal. And, therefore, until that proceeding has been finally terminated; or rather, until the defendant can show to this court, some good and sufficient legal authority for closing it, this injunction, by which it has been in point of law, up to this time, kept open, so far as it passes over his land, must be continued.

*Ordered,* that the injunction heretofore granted in this case, be, and the same is hereby continued until final hearing in, or further order of, this court.

*Ordered also,* that the defendant do forthwith, and with the least possible delay, entirely remove and take away all fences, &c. and all manner of obstructions, which, having been heretofore by him, his agents, or servants, placed or put in or upon the road in the proceedings mentioned, contrary to the inhibition of the said injunction, he has suffered to remain and continue in and upon the said road in disobedience of the said injunction, after he might have removed the same as directed by the order of this court of the 23d of April last.

*Ordered also,* that the defendant for his contempt in not obeying the injunction of this court, by continuing the said obstructions in the said road as aforesaid, after the time when he might have removed the same as directed by the order of this court of the 23d of April last, pay a fine of fifty dollars, and all the costs of the last mentioned attachment, and that he stand committed until the said fine and costs are paid.

From which last mentioned order, and also from the order of the County Court directing the injunction to issue in this cause, (12th of May, 1826,) and from the order of the Chancellor of the 4th of January, 1828, directing an attachment to be issued against the defendant, and also from the order of the court of the 9th of April, 1828, directing another attachment to issue against the defendant, he also appealed to this court. And, upon the defendants presenting to the Chancellor the bond which he had entered into with sureties for prosecuting the said appeal, the Chancellor on the 21st of May, 1828, passed the following order—

*Ordered,* that the foregoing bond this day filed, be, and the same is hereby approved. And, in reply to the motion submitted, the Chancellor declares it to be his opinion, that the said bond having been filed and approved before the actual payment of the fine and costs, as commanded by the order passed yesterday, which has been appealed from, and before the defendant had been actually committed to the custody of the messenger, to be by him closely confined in gaol, operates as a *supersedeas* of all further proceedings for that or any other purpose, in relation to the matters appealed from.

The said appeals being allowed, a transcript of the record was transmitted to this court.

At June term, 1828, on a motion made by the appellees to dismiss these appeals, it came on and was argued before Buchanan, Ch. J. and Earle, Martin and Archer, J.

*Gwynn,* for the appellees, in support of the motion, referred to *Snowden vs. Dorsey,* 6. *Harr. & Johns.* 115, and *Thompson vs. McKim, Ibid.* 302. He insisted that the appeal from the order of the 12th of May, 1826, was too late, and cited *Strike vs. McDonald,* 2 *Harr. & Gill,* 191. He also insisted that the order of the 20th of May, 1828, refusing to dissolve the injunction, was a mere interlocutory order, whereby no rights were finally settled between the parties, and from which no appeal would lie.

*Magruder,* against the motion, referred to 1 *Madd. Ch.* 128. *Eden on Inj.* 162, 163, 167. Co. Litt. 56. *a,* and the act of Ass. of 1794, *ch.* 52 *sec.* 14. He urged that there could be no breach of the injunction, until the decision of *Baltimore* County Court, under the *certiorari.* If the appellees had applied for and obtained a perpetual injunction, then the appellant might apply to the Levy Court, and obtain another order to close the road. *Denton vs. Jackson,* 2 *Johns. Ch. Rep.* 321. On an injunction to stay waste, pending an action of ejectment or trespass, it will be dissolved, on motion, unless it is shown that the complainant had succeeded at law. Here, on the decision made by *Balti-*

*more* County Court, the injunction was at an end—it had performed its office. The proceedings of the Levy Court being annulled, the appellant had no right to shut up the road; but he applied again to that court, and another order for shutting the road up was granted to him;—and he then did shut up the road. After which, it appears that the appellees applied to the Commissioners of the county, (they being substituted in the place of the Levy Court,) to *open* a new road where the old road had run. He contended that the orders of the Chancellor, directing the appellant to remove obstructions, &c. from the road in question, affected his rights; and that his rights were as much affected thereby, as in *Thompson vs. McKim.* If he were to remove his fences, &c. from the road, and it should be finally decided that they ought not to have been removed, how could he then be compensated for the injury he had sustained.

*Taney*, (Attorney General,) also, against the motion in his argument, referred to *Attorney General vs. Utica Insurance Company,* 2 *Johns. Ch. Rep.* 378. *Eden on Inj.* 157, 162, 163.

*Gwynn*, in reply, cited *Eden on Inj.* 55, 56, 162, 163. He said that the court could not compel the party to resort to a new injunction, where the reasons for a former injunction had ceased to exist, and new reasons had arisen which would justify an injunction.

BUCHANAN, Ch. J. delivered the opinion of the court. The order of the *Commissioners of Baltimore County,* on the 13th of December, 1827, confirming the report of the commissioners appointed by the *Levy Court* of that county, and directing and authorising the old road to be shut up, placed the premises over which it formerly run, under the controul of the appellant to whom the land belonged, and gave him the same right of user of the land of that road, that he had of the rest of his estate. And we think that the subsequent order of the Court of Chancery, does so materially affect the right and interests of the appellant as to bring the case within the principle of *Thompson*

*vs. McKim,* heretofore decided by this court, and form a fit subject of appeal.

The motion, therefore, to dismiss these appeals, is overruled.

MOTION OVERRULED.

EARLE, J. dissented.